# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RODNEY C. PITTS, JR.,

    Plaintiff,

v.

Civil Action: BAH-23-1403

ROBERT DEAN,
MUSBAU RAJI,
CHUKWUMA NJOKU,
OLANREWAJU OWOLABI,

    Defendants.

## MEMORANDUM OPINION

On May 24, 2023, self-represented Plaintiff Rodney C. Pitts, Jr. ("Pitts") filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, alleging he was subjected to the excessive use of force. ECF 1. Subsequently, he filed documents with the Court complaining that he was denied medical care. *See* ECF 10, at 1-2. Defendants were directed to also respond to those allegations. *See* ECF 12. Defendants Robert Dean ("Dean"), Musbau Raji ("Raji"), Chukwuma Njoku ("Njoku"), and Olanrewaju Owolabi ("Owolabi"), all corrections officers, filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. *See* ECF 20.[1] Pitts was advised of his opportunity to respond to the dispositive motion and the risks of failing to do so. *See* ECF 23. Pitts filed responses in opposition (ECF 25, 26[2]) and Defendants replied (ECF 27). No hearing is necessary to determine

---

[1] For the reasons noted in the motion, Defendants' Motion to Seal Pitts' medical records (ECF 20) is granted.

[2] To the extent Pitts seeks to add new claims through his opposition response (ECF 26) regarding a retaliatory transfer and violation of his First Amendment rights, he may not do so. *Mylan Laboratories, Inc. v. Akzo, N. V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is

the matters pending. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motion is GRANTED.

## I. BACKGROUND

### A. Pitts's Allegations

Pitts alleges that on April 4, 2023, he was speaking to Defendant Owolabi when, in response to a question posed by Pitts, Owolabi became "loud and belligerent." ECF 1-1, at 1. Owolabi then went into an office and Pitts asked to "speak with a captain." *Id.* Pitts alleges that he sat on a bench outside the office Owolabi entered and waited for a captain to arrive. *Id.* Pitts alleges that Owolabi directed Defendant Njoku to "drag Pitts back to his cell," if necessary. *Id.* Defendant Raji then allegedly "jumped on top of Pitts and began pushing his head down against the bench and wall." *Id.* Pitts alleges he was able to stand up and the assault stopped. *Id.* However, a few minutes later, he alleges Raji and Njoku attacked him again, taking him to the floor. *Id.* Twice Raji pushed Pitts's chin up, causing Pitts to have difficulty breathing. *Id.* Other officers then arrived on the scene. *Id.* Pitts claims that Raji placed his knee on Pitts's face and throat while Njoku put leg irons on him, despite the fact that Pitts claims he was already handcuffed and had "a waist chain and black box with a pad lock on." *Id.* Pitts states that he did not attack anyone and could not defend himself. *Id.* Pitts claims that Raji, on the other hand, had to be restrained by other officers while Owolabi remained in the office during the altercation. *Id.* Pitts states that Raji and Njoku "fabricated a story to cover up their role in the assault." *Id.*

---

bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). *Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

2

After the altercation Pitts was "taken to medical." ECF 1-1, at 1-2. As a result of the altercation, he suffered "some minor cuts inside of his mouth." *Id.* at 2. Pitts also states that "his biggest injuries were emotional[] and psychological[] trauma," and alleges that he suffers from "post-traumatic syndrome disorder." *Id.* Pitts declined medical assistance and was advised that he would be seen by mental health. *Id.*

As a result of the altercation, Pitts was charged with inmate rule violations, with Njoku and Raji as the "reporting staff." ECF 1-2, at 1. Njoku charged Pitts with the following rule violations: "[(1)] 100-engage in a disruptive act[; (2)] 102-commit assault or battery on an inmate[; (3)] 104-make threats that include using physical harm to objects, property or individuals[; (4)] 116-possess, misuse, tamper with, damage, or destroy security equipment or property, detention equipment, or fire suppression equipment or alarm[; (5)] 308-steal State property, possess stolen State property, possess State property without permission, or tamper with, damage, or destroy State property[; (6)] 316-disobey an order[; and (7)] 402-enter or be in in a location without authorization: Leave an assigned location without authorization; Be absent from or late reporting to an assigned location without authorization; Loiter or linger in a location without authorization; or Refuse or fail to obey or follow an order, rule, policy, or procedure regarding inmate movement or travel within or outside of the facility." ECF 1-2, at 1. Raji charged Pitts with rule violations including: [(1)] 100-engage in a disruptive act[; (2)] 104-make threats that include using physical harm to objects, property, or individuals[; (3)] 312-interere with or resist a search of a person, item, area, or location; Cause the early return of a community detail due to a violation of the rules; or commit any inmate rule violation outside of the confinement of a secure facility[; and (4)] 316-disobey an order. *Id.* at 2.

3

Pitts filed an administrative remedy procedure complaint ("ARP") regarding the altercation on April 21, 2023. ECF 1-2, at 3-7; ECF 18-1, at 4. On May 2, 2023, the time to respond to the ARP was extended until June 5, 2023. ECF 1-2, at 8. Pitts filed a supplement to the complaint (ECF 18) and attached additional information regarding his use of the administrative remedy process. *See* ECF 18-1. On July 25, 2023, the Warden found Pitts's ARP to be without merit after concluding that there "is no evidence to substantiate [Pitts's] claim that [he was] assaulted by staff" and "the force used by the staff was justified." *Id.* at 3. Pitts appealed to the Commissioner of Corrections. *Id.* On August 2, 2023, the Commissioner extended the time for a response to that appeal to September 16, 2023. *Id.* at 6. However, on August 24, 2023, months after the filing of this lawsuit, the Commissioner found Plaintiff's ARP appeal meritorious, in part, in that the Warden failed to respond to the initial ARP within the established timeframe. *Id.* at 1. However, the Commissioner further found that there was no evidence to support Pitts's claim that he was assaulted by staff on April 4, 2023. *Id.*

On August 16, 2023, Pitts sent a letter to the court stating that he had been denied medical care. *See* ECF 10, at 1-2. In his letter Pitts explained that he had a number of surgeries on his left hand and was prescribed a muscle relaxer which he had not received "over the last four weeks." *Id.* at 1. Pitts alleged that the medical providers denied him medical care because of his filing the instant complaint against correctional staff, specifically because "corrections officers and medical staff are working in cahoots." *Id.* Pitts also alleged that he was denied "segregation reviews" in retaliation for his having filed the instant lawsuit case and because he requested to press charges against the officers involved in the alleged April 4, 2023 altercation. *Id.* at 2. As noted, Defendants were directed to respond to Plaintiff's allegations regarding his medical care when they responded to the Complaint. *See* ECF 12.

4

**B. Defendants' Response**

Defendants filed a motion seeking dismissal of the Complaint or, in the alternative, for summary judgment. ECF 20-1. Defendants argue that the complaint should be dismissed because: (1) the Eleventh Amendment bars the suit against Defendants in their official capacities; (2) Pitts failed to exhaust his administrative remedies; (3) Pitts failed to state a claim against Dean; (4) Defendants did not use excessive force; (5) Pitts may not recover compensatory damages without proof of actual injures; (6) Pitts has not alleged personal participation by Defendants as to his claim regarding denial of medical care; (7) Pitts received constitutionally adequate medical care; and (8) Defendants are entitled to qualified immunity. ECF 20-1 at 2.

In support of their Motion, Defendants submitted the use of force reports prepared as a result of the altercation (ECF 20-3); the surveillance video of the use of force (ECF 20-4, Ex. B, filed separately, hereinafter "Video")[3]; Pitt's waiver of appearance and plea agreement (ECF 20-5); portions of Pitt's medical records (ECF 21); the Declaration of Robert Dean (ECF 20-7); and the Declaration of Sergeant Shakeya Sellam, the ARP coordinator for Jessup Correctional Institution ("JCI") (ECF 20-8).

A.   Altercation on April 4, 2023

According to the use of force reports, on the date of the incident Raji was assigned as "the escort officer" for JCI B Building. ECF 20-3 at 5, 10. Raji was escorting Pitts back to his cell when Pitts refused to return to his cell until he spoke with Owolabi, the building lieutenant. *Id.* Raji escorted Pitts to the case manager's office where he was sat on a bench in the hallway. *Id.* at

---

[3] Defendants filed notice reflecting that Pitts viewed the video on November 16, 2023. See ECF 24-1, at 1-2; *see also* ECF 24-1, at 1-2 (Declaration of Jason D. Clise) (noting that Pitts watched the video but noting that Pitts argued that the video did not reflect the full altercation between Defendants and Pitts).

10. Njoku and another officer, Officer Adeniyi, were in the hallway outside the office. ECF 20-3, at 8, 12.

Owolabi claims that he spoke with Plaintiff about an infraction Plaintiff previously received. *Id.* at 6. Dissatisfied with Owolabi's response, Pitts became agitated and said "[a]ll you CO's are on some bullshit and that's why y[']all get killed." *Id.* Owolabi walked away but alleges that Plaintiff "lunge[d] at him, *id.*, and, according to Njoku, "resisted and kicked the printer," i*d at 8.* Njoku grabbed Pitts's left arm and put Pitts against the wall. *Id.* at 8.

The responding officers each allege that Plaintiff ignored all verbal directives to stop resisting and continued to be noncompliant with their orders. *See* ECF 20-3, at 6-10. The officers involved allege that they were forced to take Plaintiff to the ground and ultimately had to put leg irons on him. *Id.* at 12. While the position of those involved and the location of the surveillance camera make it difficult to fully view the altercation, the video supports the assertion that a number of officers participated in the efforts to subdue Plaintiff and reflects that Plaintiff, at one point, kicked the printer/copier. *See* ECF 20-4 (video). There is no audio and the video appears to end as Plaintiff is escorted away. *Id.*

As discussed earlier, as a result of the altercation, Pitts received two Notices of Inmate Rule Violations: one filed by Njoku charging him with seven violations and one from Raji charging him with an additional four violations. ECF 1-2, at 1-2. The rule violations were merged and on April 7, 2023, Plaintiff pleaded guilty to all but two of the violations (violations of rules 102 and 312 were not pursued). ECF 20-5, at 2. He was sentenced to disciplinary segregation for 45 days and lost 60 days good time credits. *Id.*

B.     Allegations Concerning Medical Care

Plaintiff alleges that he had multiple surgeries on his left hand between February 2022 and January 2023. *See* ECF 10, at 1; see also 21-1, at 3 (noting "history of left-hand fracture and 3 corrective surgeries"). He was prescribed pain medication. ECF 21-1, at 3. On May 19, 2023, Plaintiff filed a sick call asking to be put on a different pain medication hand. *Id.* at 2. He was seen by a provider on June 2, 2023, and prescribed Robaxin (generic name methocarbamol). *Id.* at 3-5. He was prescribed Robaxin from June 2, 2023 to July 1, 2023. *Id.* at 5.

Warden Robert Dean alleges that neither he nor any other "JCI correctional staff" have any personal involvement in providing medical care to inmates, nor do they have the authority to make any decision concerning an inmate's medical care. ECF 20-7, at 1 ¶ 2. Medical care for individuals incarcerated at JCI is provided by a private medical contractor. *Id.* Warden Dean notes that inmates may fill out a sick call slip to seek medical assistance and treatment. ECF 20-7, at 1-2 ¶ 4. The sick call slips are reviewed by the private medical contractor who determines appointment dates and times for the person incarcerated. *Id.* When an incarcerated individual complains about medical care, Warden Dean claims he relies on the reports, assessments, and judgments of trained medical staff to respond to the complaint. *Id.* at 2, ¶ 5. Warden Dean, through the coordinator of ARPs for JCI, avers that Plaintiff did not file any ARPs regarding denial of medical care. ECF 20-8, ¶¶ 2, 3.

## II.     STANDARD OF REVIEW

Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. Defendants' motions are styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner

Case 1:23-cv-01403-BAH   Document 30   Filed 09/03/24   Page 8 of 14

implicate a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss or "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur as the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Pitts was on notice that the Court could treat the motions as seeking summary judgment. Accordingly, the Court will review Pitts's claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A dispute is genuine if 'a reasonable jury could return

a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

The Court is mindful, however, that Pitts is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### III. DISCUSSION

Defendants raise the affirmative defense that Pitts failed properly to exhaust his administrative remedies as to all claims before filing suit. If Plaintiff's claims were not properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530.

Because the Court may not consider an unexhausted claim, *see Jones*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 637. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

11

Within the Maryland Division of Correction, where the event complained of is subject to an Intelligence and Investigative Division ("IID") investigation, the process for administrative remedies is unavailable and an inmate is not required to use it to meet exhaustion requirements. *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023). There is no indication that the April 4, 2023 incident resulted in an IID investigation being opened which would waive the administrative exhaustion requirement.

Inmates housed at an institution operated by the Maryland Department of Public Safety and Correctional Services may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; COMAR 12.07.01.01B(1) (defining ARP). If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.06B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Exhausting administrative remedies *after* a federal complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies *during the pendency of the federal suit.*" *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (emphasis added). This Court has

12

consistently recognized this principle. *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624-25 (D. Md. 2015); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547 at *3-4 (D. Md. November 11, 2015); *Wilson v. MCTC Administration*, PWG-21-3094, 2022 WL 14849012 at *6 (D. Md. October 26, 2022); *Leupolu v. Okoluku*, SAG-21-1854, 2022 WL 4017308 at *4 (D. Md. September 1, 2022); *Hand v. Allen*, JKB-20-3119, 2022 WL 137978 at *4 (D. Md. January 14, 2022); *Wooten v. Hogan, et al.*, CCB-20-1218, 2021 WL 416947 at *3 (D. Md. September 14, 2021); *Ervin v. Corizon Health, et al.*, ELH-19-1666, 2020 WL 2490042 at *28 (D. Md. May 13, 2020); *Conway v. Carr*, RDB-19-809, 2019 WL 4806141 at *5 (D. Md. October 1, 2019); *Shiheed v. Webb, et al.*, GLR-16-3166, 2019 WL 3220122 at *5 (D. Md. July 16, 2019).

In Pitts's response in opposition, he states that he started the administrative remedy process and that "[d]ue to the COVID-19 pandemic the process on behalf of facilities (JCI) has become an issue for prisoner due to the staff exceeding deadlines as [illegible] Mr. Pitts has pointed out in his initial Petition . . . ."[4] ECF 25, at 2. In a later filing received on December 14, 2023, Pitts asked the Court to stay his case "due to [Pitts] being in the process of exhausting all ARP remedies." ECF 28, at 1. Thus, by his own admission, Pitts did not complete the administrative process as to any of his claims before filing his complaint in this Court.

As to his medical care claim, Plaintiff did not begin, much less complete the administrative process. As such, the complaint must be dismissed as to that claim. And while Pitts had begun the administrative process regarding the April 4, 2023 altercation at the time he filed suit, he had not

---

[4] Plaintiff's complaint noted that while he did file a grievance, he was "awaiting [an] answer to [a request for an] extension" because "[t]his facility has a habit to answer weeks after deadlines." ECF 1, at 2. Included as an attachment to the complaint was a form dated May 2, 2023 extending the deadline for Warden Dean to respond to Plaintiff's request for an administrative remedy to June 5, 2023. ECF 1-2, at 8. This lawsuit was filed on May 24, 2023, before the Warden even responded to the ARP process.

13

completed it and thus this claim also must be dismissed. His assertion that the remedy process has been delayed since the COVID-19[5] pandemic does not excuse his failure to exhaust remedies prior to filing suit. In fact, the evidence before the Court demonstrates that although the Warden's response to the initial ARP was delayed, Pitts did, in fact, ultimately receive a response. Simply stated, there is no dispute that Pitts did not complete his administrative remedies prior to filing this case and the Court finds no basis on this record to excuse that failure. As such, Plaintiff's excessive force claim must also be dismissed for failure to exhaust administrative remedies.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion, ECF 20, construed as a motion for summary judgment is granted. The Complaint is dismissed without prejudice for failure to exhaust administrative remedies.[6]

A separate Order follows.

Dated: September 3, 2024

/s/
Brendan A. Hurson
United States District Judge

---

[5] Any alleged delay is not the fault of inaction by prison officials as Plaintiff filed suit before the process was even complete. *See Aquilar-Avellaveda*, 478 F.3d at 1225. Plus, as noted, the Court is well aware that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Here, however, Plaintiff did not even attempt to avail himself of that remedy as to his medical care claims. Plus, since he filed this suit while his administrative remedy was still pending as to the April 4, 2023 altercation, he obviously was not prevented from availing himself of it.

[6] Having found all claims unexhausted, the Court need not address Defendants' additional arguments.

14